UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STEPHAN ALAN WARNOCK, | ) | CIV. 11-4023-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF CANTON, SOUTH | ) | |
| DAKOTA, a municipality; | ) | |
| AMY NELSON, individually | ) | |
| and in her capacity as City Manager | ) | |
| of Canton, South Dakota; | ) | ORDER GRANTING DEFENDANTS' |
| LARRY NELSON, individually and in | ) | MOTION FOR SUMMARY JUDGMENT |
| his capacity as City Attorney for the | ) | |
| City of Canton, South Dakota; | ) | |
| JOHNATHAN TOSO, individually | ) | |
| and in his capacity as Mayor of the | ) | |
| City of Canton, South Dakota; | ) | |
| LIZ BOWLING, individually and in | ) | |
| her capacity as Commissioner of the | ) | |
| City of Canton, South Dakota; | ) | |
| CHAD BROWN, individually and | ) | |
| in his capacity as Commissioner of | ) | |
| the City of Canton, South Dakota; | ) | |
| PAUL KONIETZKO, individually and | ) | |
| in his capacity as Commissioner of | ) | |
| the City of Canton, South Dakota; | ) | |
| TERRY GLENN, individually and in | ) | |
| his capacity as Commissioner for | ) | |
| the City of Canton, South Dakota; | ) | |
| BRIAN ALDEN, individually and | ) | |
| in his capacity as Commissioner for | ) | |
| the City of Canton, South Dakota; | ) | |
| CONNIE BOGUE, individually and | ) | |
| in her capacity as Commissioner for | ) | |
| the City of Canton, South Dakota; | ) | |
| JEFF NOLTE, individually and in | ) | |
| his capacity as Commissioner of the | ) | |
| City of Canton, South Dakota; and | ) | |
| MARK IVERSON, individually and in | ) | |
| his capacity as Commissioner of the | ) | |
| City of Canton, South Dakota, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants move for summary judgment and claim that all of plaintiff's claims fail as a matter of law and should be dismissed. Docket 17. Defendants argue that plaintiff cannot establish that he was denied due process because he does not have a property interest in his employment, he cannot maintain a cause of action under the Privacy Act against a municipality, he cannot establish that defendants acted outrageously, and that a § 1983 claim cannot be maintained against any of the defendants in their official or individual capacities. Plaintiff, Stephan Alan Warnock, resists that motion. Docket 21. Warnock claims that there are genuine disputes of material fact that must be decided by the jury, and defendants' motion should be denied. For the following reasons, defendants' motion for summary judgment is granted.

## BACKGROUND

The evidence[1] viewed in the light most favorable to the nonmoving party, Stephan Alan Warnock, is:

The City of Canton (Canton or the city) is a municipality that had an aldermanic form of government until 2008. Warnock began working as a part-time police officer for the city in 1995. In June of 1999, Warnock was appointed as chief of police for the city. Warnock was appointed to the same position on an

---

[1] Because Warnock did not dispute defendants' statement of uncontested material facts, defendants' facts will be deemed admitted. *See* D.S.D. Civ. LR 56.1D ("All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts.").

annual basis. In 2008, the city changed to a city manager form of government. Amy Nelson (city manager or city manager Nelson)[2] was the first full-time city manager for the city.

In December of 2009, the city police department began having issues with the radios that police officers use to stay in contact with dispatch and each other. Two members of the police department staff informed Warnock that one of the radios in a particular squad car was not working correctly. Assistant Police Chief David Jacobs also sent emails and otherwise informed Warnock that the radio issue had not been resolved. Jacobs tried to meet with Warnock to discuss the radio problem and other issues, but the meeting never occurred. In the summer of 2010, other officers approached Warnock with concerns about the performance of Officer Chris Reitsma. These concerns dealt directly with officer safety, failure to show up to work on time, failure to fill out proper paperwork, and failure to respond to calls. Docket 19-2 at 3.

As a result of the ongoing concerns in the department, Warnock met with city manager Nelson in July of 2010. At the meeting, Warnock and the city manager discussed problems with police department equipment and the complaints about Officer Reitsma. Following the meeting, city manager Nelson

_____

[2] Because two defendants, Larry Nelson and Amy Nelson, have the same last name, they will be distinguished by their job titles.

issued a written reprimand to Warnock on July 9, 2010. In the reprimand, Warnock agreed that he would:

1.   Discuss officer safety concerns within [his] department as well as personnel concerns[.]

2.   Address and reprimand dereliction of officer duties within [his] department[.]

3.   Follow up with [Nelson] in two weeks time regarding progress[.]

Docket 19-12 at 1. The reprimand also detailed Warnock's grievance rights available in the Canton personnel manual as it pertained to the discipline he received that day. Warnock did not exercise his grievance rights following the receipt of this reprimand.

Warnock did not follow up with the city manager as he promised to do in his reprimand letter. On August 23, 2010, Warnock was suspended for his failure to follow up with city manager Nelson and because of a confrontation that Warnock had with another officer in relation to Warnock's written reprimand. At the time of his suspension, Warnock was reminded of his grievance rights and his right to file a written statement in response to his suspension. He did not grieve and did not submit a written response.

Soon after Warnock's suspension, police officer Joe Carlson resigned from the police force. Warnock attempted to reach city manager Nelson to tell her about the resignation, but he did not reach her or leave a message. Warnock also did not tell city manager Nelson about the resignation that evening at the

4

city commission meeting. The city manager learned of Carlson's resignation from one of the city commissioners.

In October of 2010, city manager Nelson emailed Warnock and said that she wanted to see Warnock's performance evaluation for Officer Reitsma before Warnock gave it to the employee. Although Warnock read this email, he did not give the performance review to the city manager prior to disclosing it to the employee as requested. City manager Nelson did not agree with Warnock's evaluation of Reitsma, and Reitsma's training period was extended due to performance problems. On October 19, 2010, the city manager issued another written reprimand to Warnock for failing to communicate Officer Carlson's resignation and failing to comply with the email direction to share Reitsma's performance evaluation. Warnock was advised of his grievance rights and his ability to file a written response, but Warnock did not exercise either right.

Prior to October of 2010, Warnock hired an attorney to represent him in his relationship with the city. In December of 2010, Warnock entered into settlement negotiations with the city. Canton city attorney, Larry Nelson, provided numerous draft settlement agreements to Warnock and his counsel. Warnock requested that changes be made to these settlement drafts through his attorney. Warnock voluntarily resigned on December 17, 2010, and he and the city never reached a settlement agreement.

After Warnock's resignation, the city gave notice to Warnock that he had the right to a hearing before the city commission even though he had not officially grieved his reprimands or suspension. Warnock did not attend any post-resignation hearing. On February 11, 2011, Warnock filed this action. Docket 1. Defendants moved for summary judgment on November 7, 2011. Docket 17.

## STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows that there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either "by citing to particular parts of materials in the record," or by "showing that the materials

6

cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).

"The nonmoving party may not 'rest on mere allegations or denials, but must

demonstrate on the record the existence of specific facts which create a genuine

issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir.

2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

For purposes of summary judgment, the facts, and inferences drawn from those

facts, are "viewed in the light most favorable to the party opposing the motion."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

### I.    Due Process

Warnock claims that only the mayor of Canton has the power to issue

reprimands, to suspend, and to appoint or remove. For that reason, Warnock

asserts that the city manager violated his due process rights when she

reprimanded and suspended him.[3] Warnock claims that this is an issue of

material fact and must be resolved by the jury. Defendants argue that the city

manager does have removal authority, that Warnock is an at-will employee with

no protected property interest in continued employment, that Warnock received

---

[3] The only claim brought forth by Warnock that his due process rights were violated was that city manager Nelson violated his rights when she used "her position as City Manger to issue reprimands . . . to issue suspensions . . . [and] to issue notice to him that he would not be reappointed by her[.]" Docket 21 at 3.

due process even though he voluntarily resigned, and that he did not exhaust his administrative remedies. Finally, defendants state that there is no factual support that defendants acted in a way that shocked the conscience such that Warnock's substantive due process rights were violated. For these reasons, defendants claim that plaintiff does not have a cognizable due process claim against city manager Nelson.

"To establish a violation of procedural due process, a plaintiff must show that he has been deprived of a constitutionally protected life, liberty or property interest." *Davenport v. Univ. of Ark. Bd. Of Trs.*, 553 F.3d 1110, 1114 (8th Cir. 2009) (citation omitted). It is essential to a due process claim that any deprivation of life, liberty, or property be preceded by both notice and an opportunity for a hearing applicable to the nature of the case. *Mullane v. Cent. Hanover Bank & Trust, Co.*, 339 U.S. 306, 314 (1950). When an employee asserts a due process claim, he or she has the burden of establishing that there is a constitutionally protected property interest in his or her continued employment. *Mulvenon v. Greenwood*, 643 F.3d 653, 657-58 (8th Cir. 2011). "Whether the employee had a legitimate claim of entitlement–and thus, a constitutionally protected property interest–depends on state law and the terms of his employment." *Id.* at 657 (citing *Kozisek v. Cnty. of Seward, Neb.*, 539 F.3d 930, 937 (8th Cir. 2008)).

"A public employee with a protected property interest in continued employment receives sufficient due process if he receives notice, an opportunity to respond to the charges before his termination, and post-termination administrative review." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citations omitted). The pre-termination process necessary to satisfy due process need not be elaborate, and "even an informal meeting with supervisors is sufficient where the employee is given notice of the charges, an explanation of the employer's evidence, and an opportunity to respond." *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 936 (8th Cir. 2012) (citing *Winskowski v. City of Stephen*, 442 F.3d 1107, 1110 (8th Cir. 2006)).

"[T]he Due Process clause is [substantively] violated by executive action only when [the executive action] 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.' " *Omni Behavioral Health v. Miller*, 285 F.3d 646, 651 (8th Cir. 2002) (alterations in the original) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992)). It is possible to violate substantive due process in two different ways: (1) "the state violates substantive due process when it infringes 'fundamental' liberty interests, without narrowly tailoring that interference to serve a compelling state interest"; and, (2) "when it engages in conduct that is so outrageous that it shocks the conscience or otherwise offends

9

'judicial notions of fairness, [or is] offensive to human dignity.' " *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (citations omitted).

### A.      Removal Power of City Manager and At-Will Employment

Defendants argue that city manager Nelson had broad power to remove Warnock as police chief, and for that reason, Warnock can have no property interest in continued employment because he could be removed at any time. Defendants also state that regardless of whether Nelson had broad removal power, Warnock can have no property interest in his employment because South Dakota is an employment at-will state. Warnock argues that only the mayor has the power to remove the police chief.

At the time of Warnock's resignation, Canton was governed by a city manager scheme. Under South Dakota law, the city manager within the city manager form of government has the ability to appoint and remove[4] certain employees: "All other officers and employees . . . shall be appointed by the [city] manager and may be removed by him." SDCL 9-10-9. Specifically within a municipality, city managers:

> shall have power to appoint and remove all officers and employees
> in the administrative service of the municipality and may authorize
> the head of any department or office responsible to him to appoint
> and remove subordinates in such department or office.

---

[4] "Under a city manager form of government only the city manager has the power to appoint and remove officers and employees in the administrative service of the city." Appointment of Full Time Fire Chief, 1982 S.D. Op. Att'y Gen. 220, 1982 WL 188057, *1 (1982) (citing SDCL 9-10-13).

> Appointments made by or under the authority of the manager shall be made without definite term on the basis of executive and administrative ability and of the training and experience of such appointees in the work which they are to perform.

SDCL 9-10-13.[5] "Statutory removal power of officers is one of the 'great' powers afforded municipalities." *Patterson v. Linn*, 636 N.W.2d 467, 469 (S.D. 2001) (citing *Finck v. City of Tea*, 443 N.W.2d 632, 634 (S.D. 1989)).

Under the statutory scheme for city-manager municipalities in South Dakota, it is apparent that city manager Nelson had the power to reprimand Warnock, to suspend him, and, ultimately, to terminate him had she chosen to do so. Warnock has brought forth no additional facts to show that there is a genuine dispute in material fact on this issue. Based on the facts before the court, city manager Nelson did not violate Warnock's due process rights by acting under authority she did not possess.

Moreover, Warnock has not explained how such action would have deprived him of a life, liberty, or property interest or how any one defendant's

---

[5] The city also has an ordinance that mirrors SDCL 9-10-13 and gives the city manager the "power to appoint and remove all officers and employees in the administrative service of the municipality[.]" Canton, S.D., Ordinance 2.14.010, City Manager Responsibilities. Additionally, the city also has an ordinance that specifically states that "[t]he management of the police force shall be under the city manager. He or she shall have power to remove or discharge the chief of police or any police officer and such removal or discharge shall be without the approval of the city commissioners[.]" Canton, S.D., Ordinance 2.28.020 Management of Police Department. Though these ordinances do not have an enactment date, neither party has contested the validity of the ordinances.

actions shocked the conscience. Warnock voluntarily left his position as chief of police, and he has made no factual showing that he was subject to an adverse employment action. Warnock admits that his decision to resign was voluntary,[6] and that he knew he'd "be happier not working with the City[.]" Docket 19-5 at 2. Warnock has not made a constructive discharge[7] claim or made a showing that he worked in a hostile work environment. His complaint is that city manager Nelson did not have the authority to discipline him. Because Warnock was not terminated and he does not allege that his resignation amounts to a constructive discharge, he cannot make a showing that he was denied a property right when he voluntarily gave up his position.

Additionally, South Dakota is an employment at-will state, and an employee can be terminated with or without cause. SDCL 60-4-4; *Anderson v. First Century Fed. Credit Union*, 738 N.W.2d 40, 45 (S.D. 2007). There is no

---

[6] Warnock stated that the reason he decided to retire was because of "[a] level of dissatisfaction of working with the city. The stress management that I was using apparently wasn't good enough to handle what I was going through at the time, and I realized that I would be a lot happier not working with the City of Canton anymore. And I knew that I could probably financially survive retiring." Docket 19-5 at 2. Warnock also admits that no one from the city forced him to retire. *Id.*

[7] To succeed on a constructive discharge claim, the employee must make a showing that: (1) "that a reasonable person would have found the conditions of [his] employ intolerable"; and (2) that the employer either intended to force [him] to resign or could have reasonably foreseen that [he] would do so as a result of its actions." *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1008 n.13 (8th Cir. 2000) (citation omitted).

evidence that Warnock had any sort of employment contract that provided additional protection from being fired at-will. Even if the city manager did not have broad removal powers as given by the legislature, Warnock does not have a property interest in his employment because he is an at-will[8] employee. *See Kozisek v. Cnty. of Seward, Neb.*, 539 F.3d 930, 937 (8th Cir. 2003) (stating that an employee who considered himself to be at-will could not show that he had "a reasonable and legitimate expectation of continued employment," thus, had no property interest); *Hammer v. City of Osage Beach, Mo.*, 318 F.3d 832, 839 (8th Cir. 2003) ("An at-will public employee generally does not have a protected liberty interest in continued employment which would obligate a government employer to provide a hearing in connection with the employee's discharge.").

Warnock's only claim was that Nelson violated his due process rights because she "acted under color of authority that she did not have." Docket 19-1 at 12. Warnock did not expand on that concept in response to defendants' motion for summary judgment, and he did not express how that allegation amounts to a procedural or substantive due process claim. Warnock has not carried his burden of coming forward with additional evidence to support his due process claim. He has failed to show that he had a protected property

---

[8] The city's personnel manual also confirms that Warnock was an at-will employee. The manual states that even after the conclusion of a training period "employment is still at-will . . . but that due process requirements [and grievance procedures] will be followed[.]" Docket 19-6 at § 4.10.

13

interest in his at-will employment, so he cannot show that his procedural or substantive due process rights were violated by defendants.

### B.    Failure to Exhaust

Additionally, defendants argue that Warnock cannot claim that his due process rights were violated because he failed to exhaust his administrative remedies and did not grieve his claims, so his rights are waived. Warnock did not respond to this argument.

"[A] litigant asserting a deprivation of [a property right in violation of] procedural due process must exhaust state remedies before such an allegation states a claim under § 1983." *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000) (citations omitted). This exhaustion requirement is necessary so that a procedural due process claim may be ripe for adjudication. *Id.* at 1020. "[A]n employee waives a procedural due process claim by refusing to participate in post-termination administrative or grievance procedures made available by the state." *Krentz v. Robertson*, 228 F.3d 897, 904 (8th Cir. 2000) (citations omitted). The Eighth Circuit Court of Appeals has held "that a government employee who chooses not to pursue available post-termination remedies cannot later claim, via a § 1983 suit in federal district court, that he was denied post-termination due process." *Christiansen,* 674 F.3d at 935-36.

Warnock admits that he was told he had the option to write response letters to his reprimands and was routinely reminded of his grievance rights.

14

Docket 19-4 at 13. Warnock was reminded of his grievance rights, as well as his ability to respond in writing to the claims against him, following his July 2010 and October 2010 reprimands and his August 2010 suspension. Dockets 19-12; 19-14; 19-15. Additionally, there is evidence that the city sent Warnock's attorney a letter that informed Warnock of his right to a hearing before the city commission, and the city attempted to schedule a hearing on Warnock's reprimands. Docket 19-19. Warnock did not attend any meetings with the city. Because procedural due process guarantees "the opportunity to be heard at a meaningful time and in a meaningful manner" and Warnock admits that he received notice and had an opportunity to be heard, there is no genuine issue of material fact left in dispute. *Dahl v. Rice Cnty., Minn.*, 621 F.3d 740, 745 (8th Cir. 2010).

There is no genuine issue of material fact as to whether Warnock was afforded pre-resignation and post-resignation process. Warnock does not contradict that he received process and knew his rights. Finally, Warnock cannot maintain that he was denied pre-termination or post-termination due process procedures because he was never terminated. There was no need for Warnock to be heard at a reasonable time and in a reasonable manner because he voluntarily resigned.

As previously discussed, Warnock admits that he knew about his right to grieve, he knew he had the right to a hearing, and he did not utilize those

15

procedures. In addition to the other reasons listed, Warnock's failure to exhaust his procedural grievance remedies acts as an additional bar to his claim that his due process rights were violated. Warnock has failed to bring forth additional factual support that he has a cognizable substantive[9] or procedural due process claim; therefore, summary judgment is appropriate.

## II.     Privacy Act

Warnock asserts that defendants acted in violation of the Privacy Act when city manager Nelson released information of his suspension to the public. Defendants argue that Warnock cannot maintain a private cause of action under the Privacy Act against the city because such actions can only be brought against federal agencies, not municipalities. Defendants also claim that Warnock has no proof as to who released the news of his suspension and, without more, he cannot meet his burden on summary judgment. Warnock has not responded to this argument.

Under the Privacy Act, federal agencies are prohibited from "disclos[ing] any record which is contained in a system of records by any means of

---

[9] Warnock never specified whether he claimed that his procedural or substantive due process rights were violated. The court analyzed the claim by assuming without deciding that Warnock's claim was a procedural due process claim. Regardless, Warnock did not bring forth any evidence that his substantive due process rights were violated. He did not establish any conduct by defendants that infringed upon his "fundamental liberty interests, without narrowly tailoring that interference to serve a compelling state interest," or that defendants engaged in conduct that was outrageous or shocked the conscience. *Weiler*, 137 F.3d at 1051 (citations omitted).

communication to any person . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." *Doe v. Dep't of Veterans Affairs of the U.S.*, 519 F.3d 456, 460 (8th Cir. 2008) (citing 5 U.S.C. § 552a(b)). In this case, the issue is whether a municipality is a "federal agency" under the statute. The Eighth Circuit Court of Appeals has determined in an unpublished opinion that a district court did not err when it concluded that a claim cannot be brought under the Privacy Act against a county. *See Spurlock v. Ashley Cnty., Ark.*, 281 Fed. App'x 628, 629 (8th Cir. 2008) (concluding that plaintiff failed to state a claim under the Privacy Act against a county when actions under the Privacy Act are limited to federal agencies) (citing *Pennyfeather v. Tessler*, 431 F.3d 54, 56 & n.1 (2d Cir. 2005); *Schmitt v. City of Detroit*, 395 F.3d 327, 328-31 (6th Cir. 2005); *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir. 1985); *Polchowski v. Gorris*, 714 F.2d 749, 752 (7th Cir. 1983)). A municipality is comparable to a county.

The court finds *Spurlock* persuasive. Warnock has not come forward with additional facts to show that there are genuine issues of material fact that preclude summary judgment on this issue. Warnock cannot carry his burden of showing that the city violated the Privacy Act because this statute is not applicable to actions against municipalities, which are not agencies of the federal government. Summary judgment is appropriate on this issue.

17

### III.    Intentional Infliction of Emotional Distress

Warnock claims that all defendants intended to inflict emotional distress upon him when they allowed negative working conditions to continue for such a length of time. Specifically, Warnock states that attorney Nelson and city manager Nelson were culpable because they harassed him while he was performing his job and continued that course of behavior. Docket 21 at 4. Defendants argue that Warnock cannot meet his burden on summary judgment because he has not shown that defendants acted outrageously or that Warnock sustained serious emotional distress.

To make a prima facie showing of intentional infliction of emotional distress, the litigant must prove: "(1) an act by the defendant amounting to extreme and outrageous conduct; (2) intent on the part of the defendant to cause the plaintiff severe emotional distress; (3) the defendant's conduct was the cause in-fact of plaintiff's distress; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct." *Anderson,* 738 N.W.2d at 51–52. The South Dakota Supreme Court has said that the alleged conduct must be so outrageous in character and "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Richardson v. E. River Elec. Power Coop., Inc.,* 531 N.W.2d 23, 27 (S.D. 1995) (citation omitted). "Although physical symptoms are not required to prove severe emotional distress in South Dakota,

the plaintiff must provide some type of evidence adequate to prove that severe emotional distress does, in fact, exist." *Christians v. Christians,* 637 N.W.2d 377, 389 (S.D. 2001) (citation omitted).

Warnock stated that when city manager Nelson asked Warnock to investigate the dissension in his department it was a request to fail. Warnock claims that the city manager's reprimand and directive for Warnock to respond to that reprimand in two weeks was another way to make Warnock's tenure difficult. Docket 21 at 5. None of this conduct approaches extreme or outrageous conduct that goes beyond all bounds of decency or is " 'utterly intolerable in a civilized community.' " *Richardson*, 531 N.W.2d at 27 (citation omitted). City manager Nelson's requests of Warnock appear to be asking Warnock to complete routine tasks or job duties, and Warnock has not brought forth additional factual support that any of defendants' conduct amounted to being extreme or outrageous.

Moreover, Warnock has made no showing that the city manager[10] intended to cause him severe emotional distress or that he has, in fact, suffered extreme emotional distress. Warnock stated in his deposition that he had

---

[10] Warnock initially claimed that he also had an intentional infliction of emotional distress claim against city attorney Nelson. The court only analyzed Warnock's claims against the city manager because Warnock brought forth no additional factual support to prove such a claim against any of the other named defendants. Warnock has no cognizable claim against any of the other defendants based on the record before the court.

feelings of aggravation at home, had increased discomfort at work, and had elevated high blood pressure. Docket 19-5 at 10-11. Warnock also admitted that he had trouble with his blood pressure prior to the alleged conduct at issue here. Warnock stated, however, that he has not sought mental health support or physical help due to his distress and has not met with a counselor. Docket 19-5 at 9-10. Without additional factual support, Warnock has not shown that there are genuine issues of material fact in dispute, and summary judgment is granted.

**V.      § 1983 Claims**

Warnock argues that attorney Nelson and city manager Nelson "acted under the color of their authority to the detriment of the Plaintiff" and violated his rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments. Warnock argues that all other defendants denied him due process by allowing city manager Nelson and attorney Nelson to treat Warnock in an inappropriate manner. Defendants respond that none of the defendants deprived Warnock of a federal right, that they are protected by qualified immunity, and that Warnock cannot establish that a custom or policy of the city was the moving force behind Warnock's alleged constitutional violation.

Claims brought under 42 U.S.C. § 1983 are intended to provide "a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance,

regulation, custom, or usage, of any State or Territory . . . .' " *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. § 1983). Claimants can bring suit against defendants in either their official or individual capacity.

### A.     Individual Capacity Claims

"In an individual capacity suit under § 1983, a plaintiff seeks to impose personal liability on a state actor for actions taken under color of state law." *Wagner v. Jones*, 664 F.3d 259, 268 (8th Cir. 2011) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). "To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right[.]" *Pulaski Cnty. Republican Comm. v. Pulaski Cnty. Bd. of Election Comm'rs*, 956 F.2d 172, 174 (8th Cir. 1992) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

When a municipal actor is sued in his individual capacity, he can plead an affirmative defense of qualified immunity to shield him in his individual capacity. *Serna v. Goodno*, 567 F.3d 944, 951 (8th Cir. 2009) (citation omitted). Government officials who are performing discretionary tasks are generally shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome a defense of qualified immunity, the court must examine whether:

" '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.' " *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)). The court has the discretion to choose which prong to analyze first. *Pearson v. Callahan*, 555 U.S. 223, 241-242 (2009).

Under the second prong, a plaintiff must show that the law was clearly established at the time of the alleged constitutional violation. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) ("Although the defendant bears the burden of proof for this affirmative defense, the plaintiff must demonstrate that the law was clearly established." (citing *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002))). " '[C]learly established' means '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Jones*, 2012 WL 1033539, at *2 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The decisive fact in the clearly established analysis is not whether the municipal actor's position turned out to be incorrect but rather was the question open at the time he acted. *Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985).

22

### 1.   Larry Nelson

Warnock's only claim against the city attorney was that his proposed settlement discussions represented contracts of adhesion. A contract of adhesion is one where the bargaining power of the parties is unequal and courts focus on whether there are "overly harsh or one-sided terms." *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 194-95 (S.D. 2007) (citations omitted).

Although the city and Warnock did have settlement discussions and the city attorney did send drafts of proposed settlement agreements, those agreements could not be contracts of adhesion because they were never signed and enforceable.[11] And contrary to examples of traditional contracts of adhesion, Warnock was represented by an attorney during these negotiations who acted on his behalf and informed him of his rights and options. Further, Warnock requested that changes be made to the proposed settlement contract and those changes were added to the drafts. These facts are not indicative of a contract of adhesion.

Most importantly, Warnock has not established how unsigned settlement negotiations amount to city attorney Nelson's depriving Warnock of a clearly

---

[11] Additionally, Warnock admitted that he was not harmed as a result of the settlement negotiations or the unsigned agreements; therefore, the court can provide no relief. Monetary damages are not appropriate when there is no identified harm, and the court cannot declare a contract to be unenforceable when it does not exist.

established right.[12] Warnock also has not brought forth additional factual support to indicate how this claim would amount to an actionable claim under § 1983. Any allegation that attorney Nelson attempted to have Warnock sign a contract of adhesion is not a proper claim under § 1983 because it does not involve the deprivation of a federal right. Warnock has failed to show the existence of genuine disputes in material fact. For these reasons, summary judgment is granted on Warnock's § 1983 claim against attorney Nelson in his individual capacity.

### 2.      Mayor, City Manager, and City Commission

In his complaint, Warnock alleges claims against the city manager, the mayor, and each member of the city commission in their individual capacities. He has brought forth no evidence or argument as to how he has a cognizable claim against any of these defendants. Warnock's only claim under § 1983 against the city manager was that she deprived him of his due process rights—

---

[12] If Warnock could have shown that the law was clearly established, the city would have to show that its actors acted reasonably in accordance with the clearly established law. *Monroe*, 495 F.3d at 594. This issue revolves around a standard of objective reasonableness because "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) (citation and quotations omitted). Accordingly, the question is "whether a reasonable [city attorney] could have believed [his actions] to be lawful, in light of clearly established law and the information [he] possessed. [His] subjective beliefs about the [conduct] are irrelevant." *Anderson*, 483 U.S. at 641. In this case, the court does not have to reach this issue, but finds that city attorney Nelson's actions appear to be reasonable in light of clearly established law and based on the record before the court.

a claim the court has already rejected. Additionally, Warnock has neither established that the mayor or any member of the city commission deprived him of a federal right nor shown that such a right was clearly established at the time of the deprivation. Bald assertions that these defendants are liable under § 1983 because they allowed other individuals to treat Warnock inappropriately is insufficient to carry Warnock's burden on summary judgment. *See Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' ").

Because Warnock did not come forth with additional factual support as to how any of these defendants violated his clearly established constitutional rights, there is no genuine dispute of material fact remaining for trial. For these reasons, qualified immunity acts as an additional bar for claims asserted against defendants in their individual capacities. All claims against the city attorney, the city manager, the mayor, and the members of the city commission in their individual capacity are dismissed.

### B.      Official Capacity Claims

Warnock also claims that the city manager, the city attorney, the mayor, and the members of the city commission are liable for their misconduct in their official capacities. Defendants argue that Warnock cannot establish that there

was a custom or policy within the city that was the moving force behind the alleged violation of Warnock's rights.

When governmental officials are sued in their officially capacity it is generally just "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690 n.55). The case, "in all respects other than name, [is] to be treated as a suit against the entity." *Id.* at 166 (citation omitted).

Typically, a municipality cannot be held vicariously liable for its employees' unconstitutional acts under 42 U.S.C. § 1983. *Monell*, 436 U.S. at 694. "In order to make out a § 1983 case against a municipality, a plaintiff must show that a municipal policy or custom, either official or unofficial, was the moving force behind a constitutional violation." *Marti v. City of Maplewood, Mo.*, 57 F.3d 680, 684 (8th Cir. 1995) (citing *Monell*, 436 U.S. at 694). If a municipality's officials or employees act to "implement or execute an unconstitutional municipal policy or custom," then the municipality may be held liable for unconstitutional acts. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (citations omitted). A "policy" is defined as "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.* (citation omitted). Conversely, to prove a "custom" the claimant must show:

     (1)     The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

     (2)     Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

     (3)     Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, *i.e.*, [proof] that the custom was the moving force behind the constitutional violation.

*Id.* (quoting *Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 645 (8th Cir. 1990) (alterations in the original)).

" '[L]iability for violating constitutional rights may arise from a single act of a policy maker . . . .' " *Miller v. Compton*, 122 F.3d 1094, 1100 (8th Cir. 1997) (citing *McGautha v. Jackson Cnty., Mo., Collections Dep't*, 36 F.3d 53, 56 (8th Cir. 1994)). That act, however, " 'must come from one in an authoritative policy making position and represent the official policy of the municipality.' " *Id.* There must be "a deliberate choice to follow a course of action . . . from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Municipal liability attaches only when the municipal policy or custom is the "moving force" behind the alleged constitutional violation. *Monell*, 436 U.S. at 694-95.

Warnock has not carried his burden of bringing forth additional evidence that establishes what his constitutional violation is under § 1983. Warnock has neither stated nor established the specific policy or custom within the city of Canton that was the moving force behind his alleged constitutional violation.

Warnock has not identified whether his rights were violated by the city's employee manual, the grievance structure, the city manager scheme itself, or any other pattern of misconduct that would qualify as a policy or custom. The court will not guess which policy or custom Warnock finds to be violative of his rights, but on the facts in the record, nothing appears to rise to the level of potential misconduct under § 1983.

Warnock also has not established which of the defendants could be described as policymakers such that liability under § 1983 would attach. Without more, Warnock's claim must fail because he has not identified any genuine disputes of material fact that have yet to be resolved. Because Warnock has not brought forth any evidence supporting his § 1983 action against defendants in their official capacities, he cannot carry his burden on summary judgment. *See Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' "). The court finds that there is no genuine dispute in material fact as to Warnock's claims against all defendants in their official capacities.

## V.    **Punitive Damages**

Because Warnock has no remaining viable claims, his assertion that he is entitled to punitive damages also fails. A punitive damages claim cannot stand on its own.[13]

---

[13] Warnock contacted the clerk's office of the District of South Dakota on May 24, 2012, to inform the court that his attorney is no longer practicing law. Warnock's response to defendants' motion for summary judgment was due

**CONCLUSION**

Warnock's due process claim does not survive summary judgment because he has not shown that he had a property interest in his continued employment and has not brought forth sufficient facts to support his claim. Summary judgment is also appropriate on Warnock's Privacy Act claim because private action under the Privacy Act cannot be maintained against a municipality. Warnock failed to show that defendants acted outrageously, that defendants intended to cause him severe emotional distress, and that he sustained severe emotional damages; therefore, defendants are entitled to summary judgment on the intentional infliction of emotional distress claim. Warnock's cause of action under § 1983 against all defendants in their individual capacities fails because they are shielded by qualified immunity, and Warnock did not show that any defendant deprived him of a clearly established federal right. Finally, Warnock's official capacity claims under § 1983 also fail because he did not establish a custom or policy that was the moving force behind the alleged violation of his constitutional rights. For these reasons, defendants' motion for summary judgment is granted. Accordingly, it is

---

November 28, 2011. At the time of Warnock's attorney's resignation, all work responding to the motion for summary judgment was complete. If Warnock wants a new attorney on appeal, then that is his own personal obligation in this civil matter.

29

ORDERED that defendants' motion for summary judgment (Docket 17) is granted.

Dated June 7, 2012.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE